## Roberts, et al. v. Calhoun.

(Decided June 3, 1913.)

### Appeal from Pulaski Circuit Court.

1. Boundaries—Location of Corners and Lines—Evidence—Weight and Sufficiency.—Evidence, while not satisfactory, held sufficient to establish location of lost corners and lines.

2. Appeal—Records—Omissions—Presumptions.—Where maps and exhibits, not copied into the record in support of the finding and judgment is persuasive merely, it will be presumed that the finding and judgment is correct.

DENTON & FLIPPIN for appellants.

MORROW & MORROW for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Clarence Roberts and Magola Roberts, infant children of Henry Roberts, deceased, by their guardian, brought suit in the Pulaski Circuit Court against Bluford Calhoun, in which they alleged that they were the owners of a certain described tract of land in said county, upon which the said Calhoun was committing trespass by cutting and removing timber therefrom. They asked that he be enjoined and restrained from so doing. A temporary restraining order was issued. Defendant answered and admitted cutting the timber, but denied that plaintiffs were the owners of the land from which it was cut. Upon this issue, the case was prepared for trial, and upon final submission the chancellor was of opinion that the plaintiffs did not own the land on which the timber in question stood, and he, therefore, dismissed their petition. They appeal.

Appellants' father, Henry Roberts, owned a tract of land along the waters of the Cumberland river near the mouth of Cave Creek and known as the Seminary sur-

vey. The beginning point of said survey is lost, and there is no fixed object marking the second and third corners. The accompanying map shows the location of the timber which was cut, with reference to the claims of appellants and appellee.

If the true boundary line of the Seminary survey is the black line from X to B., the judgment is correct and should be affirmed. On the other hand, if the exterior boundary line of said survey is as shown on the map by the dotted line P.—14, then the timber in controversy stood upon land admittedly owned by appellants.

Hence, the controversy is over the true location of this line separating the lands of appellants from those of appellee.

The deed under which appellants claim calls for the following boundary:

"Beginning at a Sugar tree, thence running S. 79 E. 60 poles to a Dogwood; thence N. 88 E. 120 poles to a poplar; thence S. 79 E. 80 poles to a gum; thence N. 85 E. 48 poles to a dogwood; thence S. 49 E. 66 poles to a black oak; thence S. 71 E. 20 poles to a white oak; thence S. 13 E. 80 poles to an elm; thence N. 65 E. 70 poles to two poplars; thence N. 20 W. 40 poles to an elm; thence N. 15 E. 80 poles to a poplar; thence N. 25 W. 100 poles to a poplar and dogwood; thence N. 83 W. 80 poles to a black oak; thence N. 25 W. 140 poles to a double post oak; thence S. 48 W. 380 poles to the beginning."

The sugar tree at the beginning corner has, according to the testimony of all the witnesses, been gone for many years. While several of the witnesses for appellants have testified, either from personal knowledge or from statements that have been made to them by old citizens who were acquainted with the location of this tree, that it stood at or near the intersection of the dotted lines at "P," approximately the same number of witnesses for appellee have testified that it stood at or near the intersection of the dark black lines at "B." The reasons given by the witnesses for so locating this corner are not only unsubstantial but far from satisfactory. Many of them never saw the tree standing, and testify merely from their memory of what old inhabitants said to them in conversations had from ten to forty years before the date upon which they were testifying. With no other means of enabling them to fix the location of this beginning corner, it is not surprising that they are unable to agree as to its true location. This evidence, when considered as a whole, cannot be said to be of any material aid in determining the true location of this disputed line.

The only evidence in the record of substantial value is that of the surveyor, M. A. Waddle, who recently ran out some of the lines of the Seminary survey in an effort to locate the corner in dispute. He testifies that corners 1, 2 and 3, of said survey were lost, that is, there was nothing at either of these points to show where the corners stood, but that at the fourth point, the gum tree

called for as a corner tree was still standing, and the figures or marks on it showed that it was a corner tree. From the age of the marks on this tree, the witness was able to testify that it was, in fact, the tree called for in the original survey. He started at this gum tree and, by reversing the calls and retracing the lines, established the beginning corners at the intersection of the black lines at the letter "B." He testifies that he reversed the call S. 79 E. 80 poles, and that the line, when so run, brought him near a point where it was claimed the poplar tree marking the third corner in the Seminary survey once stood. From that point he reversed the next call, N. 88 E. 120 poles, carrying him back to the second corner of the Seminary survey, and from that point he ran the line, S. 79 E. reversed 60 poles, making the proper allowances for variations, and that brought him to the point designated on the map by the letter "B." He then reversed the call and ran the closing line, which is the line in dispute, and found some marked timber along the black line running from the figure "X" to the figure "1 B." This timber was not exactly on the line but near it, varying from six to ten feet. The marks on these trees showed that they had been there for many years. While this evidence is not at all conclusive, it is persuasive, that the line "X-B," as established by this witness is approximately correct.

The record is not entirely clear as to how the closing lines of the Seminary survey were run in order to establish the point "X," but as the original patent, as well as the deed under which appellants claim, calls for a straight line between the last and first corners, and this line, when run by the witness was found to be near a fairly well defined line of trees bearing marks sufficiently ancient to warrant the inference that they were line trees of the Seminary survey, it is apparent that the point, at which he started to run the closing call of the Seminary survey, must have been approximately correct.

Reference is made by the witness to exhibits and maps which are not copied into the record and which the clerk of the lower court has certified, in response to rule, that he is unable to supply. Just what aid these lost exhibits and maps would be in enabling us to determine the true location of this disputed line, it is impossible to tell, but, as the chancellor had the benefit of this evidence and was doubtless also acquainted with many of the witnesses and thus in a better position to judge of the

weight that should be given their testimony, we feel that this is one of that class of cases where we may, with peculiar propriety, rely upon the judgment of the chancellor. Indeed, while the evidence before us is not satisfactory, the weight thereof supports the finding of the chancellor. The judgment is, therefore, affirmed.